IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

COLEMAN CONSULTING LLC                                                          PLAINTIFF

v.                                       Case No. 4:18-cv-4123

DOMTAR CORPORATION and
DOMTAR A.W. LLC                                                                 DEFENDANTS

**MEMORANDUM OPINION**

Before the Court is Defendants' Motion for Summary Judgment. ECF No. 92. Plaintiff has filed a response. ECF No. 119. Defendants have filed a reply. ECF No. 121. The Court finds this matter ripe for consideration.

**I. BACKGROUND**

This is an action asserting two claims related to consulting services provided by Plaintiff Coleman Consulting LLC at a pulp mill facility in Ashdown, Arkansas ("Ashdown Mill"), which is owned by Defendant Domtar A.W. LLC.[1] Farnsworth Coleman, Sr. ("Coleman"), the sole member of Coleman Consulting LLC, traveled to the Ashdown Mill to provide consulting services related to the Chemi-Washer. Coleman, on behalf of Plaintiff, drafted a one-page document entitled "Confidentiality Agreement Between Coleman Consulting LLC and Domtar Ashdown Mill" ("the Agreement"), which is the document at issue in this case. ECF No. 1-1.

Coleman presented the Agreement to John Borowitz, the Ashdown Mill Superintendent, who signed the Agreement along with Coleman on November 11, 2016. ECF No. 1-1. The Agreement states that Plaintiff "agrees to consult for Domtar Ashdown mill" in several different areas related to the Chemi-Washer.[2] ECF No. 1-1. The Agreement also includes a provision

---

[1] The parties dispute whether Defendant Domtar Corporation also owns and operates the Ashdown Mill.
[2] The Chemi-Washer is a specialized piece of equipment specific to the pulp production process at paper mills. In

regarding the confidential nature of Plaintiff's procedures and recommendations. The Agreement also includes the following paragraph regarding compensation:

> Coleman Consulting will be compensated to included expenses and hourly rate ($250.00/hr) along with (Retainer fee, based on a percentage of NPS (net profit savings). Such fee will be verified and agreed upon based on Customer Savings, and increased production.

ECF No. 1-1. The Agreement contains no durational provision. Coleman visited the Ashdown Mill on four different occasions. He then prepared and emailed a list of Chemi-Washer recommendations to Borowitz.

Plaintiff asserts that at some point during the consulting process, Coleman and Borowitz met in person to discuss the details of the Agreement. Plaintiff alleges that, at this meeting, Coleman and Borowitz agreed to orally modify the Agreement to specify that Plaintiff would receive 30% of the increased "net profit savings" and to include a durational term of ten years. Defendants deny that this meeting ever took place and maintain that Borowitz never agreed to a 30% profit-sharing provision or a ten-year durational term. According to Defendants, Coleman and Borowitz never modified the contract any way.

Plaintiff submitted invoices to Domtar A.W. LLC, which included charges for a "retainer fee,"[3] fees of $250.00 per hour, and expenses. The invoices totaled $30,929.40, and Domtar A.W. LLC paid the invoices in full in December 2016. On May 22, 2017, Borowitz sent an email to Coleman stating that his "services [were] no longer needed." ECF No. 103. Borowitz explained that Plaintiff was one of three companies that were invited to consult about the runnability of the Ashdown Mill and that the recommendations from the three companies were consolidated and prioritized based on "ROI and feasibility." ECF No. 1-3. Borowitz further explains that there

---

short, it is a pulp washer. It separates the wood fiber material that is used to make paper from the lignin, or "black liquor."

[3] It does not appear that the "retainer fee" included in the invoices is based on a percentage of net profit savings.

were "a lot of consistent recommendations." ECF No. 1-3. Defendants assert that Plaintiff's recommendations were not implemented at the Ashdown Mill and that most of the recommendations were routine maintenance procedures that were already in place before Coleman was hired. ECF No. 93, ¶ 54. Plaintiff, however, maintains that the "majority of the improvement items were first implemented as a result of Coleman." ECF No. 118, ¶54.

In this lawsuit, Plaintiff claims that Defendants breached the Agreement by refusing to pay the "retainer fee" based on 30% of any actual savings or increased profits realized by the Ashdown Mill resulting from the implementation of Coleman's recommendations. ECF No. 1-1, ¶ 32. Alternatively, Plaintiff makes an unjust enrichment claim, arguing that Defendants received the benefit of Plaintiff's consulting services without paying for those services. Defendants argue that they are entitled to summary judgment as to both claims.

## II.  LEGAL STANDARD

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quotation omitted). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252. "There is no genuine issue of material fact when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Zimmerli v. City of Kansas City, Missouri*, 996 F.3d 857, 862-63 (8th Cir. 2021) (quotation omitted).

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92

F.3d 743, 747 (8th Cir. 1996). "The party moving for summary judgment generally has the burden of demonstrating the absence of any genuine issues of material fact." *Zimmerli*, 996 F.3d at 863. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of a ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

In its complaint, Plaintiff makes claims for both breach of contract and unjust enrichment. Defendants assert that they are entitled to summary judgment on both claims. The Court will first address the breach of contract claim and then, if necessary, will move to the alternative unjust enrichment claim.

### A. Breach of Contract

Plaintiff claims that Defendants breached the Agreement by failing to pay Plaintiff the retainer fee, which Plaintiff asserts is 30% of any net profit savings resulting from the implementation of Coleman's recommendations and services. Defendants argue that Plaintiff's breach of contract claim is barred by the statute of frauds. Plaintiff counters that the statute of frauds does not apply because the Agreement is capable of performance within one year, the Agreement is an employment contract terminable at will, and the Agreement fits within two exceptions to the statue of frauds.

#### 1. Incapable of Performance Within One Year

Although not expressly stated, both parties appear to agree that Arkansas law governs the

Agreement and subsequent purported oral modification of the Agreement. The statute of frauds, in relevant part, requires a contract, promise, or agreement to be in writing if the contract is incapable of performance within one year from the making of the contract. *See* Ark. Code Ann. § 4-59-101(a)(6).[4] A contract is "not within the provisions of the statute of frauds where the proof demonstrate[s] that the contract [i]s capable of performance within one year." *Township Builders, Inc. v. Kraus Const. Co., Inc.*, 286 Ark. 487, 491, 696 S.W.2d 308, 310 (Ark. 1985). The general rules regarding the statute of frauds are the same today as they were over 125 years ago:

> In determining when contracts come within the one-year statute of frauds, courts have been governed by the words, "not to be performed." They have treated them as negative words. In construing them it is said: "It is not sufficient to bring a case within the statute that the parties did not contemplate the performance within a year, but there must be a negation of the right to perform it within the year." . . . [I]t is well settled that the statute only includes those contracts . . . which, according to a fair and reasonable interpretation of their terms in the light of all the circumstances which enter into their construction, do not admit of performance in accordance with their language and intention within a year from the time they were made; and that it includes no agreement if, consistently with its terms, it may be performed within that time.

*Township Builders*, 286 Ark. at 491, 696 S.W.2d at 310 (citing *Railway v. Whitley*, 54 Ark. 199, 15 S.W. 465 (Ark. 1891)). In sum, the statute of frauds only applies to contracts that are incapable of performance within a year, even if there is a possibility or probability that it might require a longer time. *Id.* at 492, 696 S.W.2d at 310. Further, the written agreement relied upon for compliance with the statute of frauds must contain all the essential terms of the agreement. *Jackson v. Crump*, 2022 Ark. App. 136, at 8; *Van Dyke v. Glover*, 326 Ark. 736, 742, 934 S.W.2d

---

[4] The statute of frauds also requires that the writing be signed by the party to be charged. The parties dispute whether Borowitz had the authority to bind Defendants to the Agreement. Defendants offer evidence to support its assertion that Borowitz did not have the authority to bind Defendants to the Agreement. However, at the summary judgment stage, the Court must view the evidence in the light most favorable to Plaintiff. Plaintiff offers evidence to support its assertion that Borowitz had the actual and apparent authority to bind Defendants to the Agreement. For summary judgment purposes, the Court must accept Plaintiff's assertion. However, the Court makes no ruling on this issue of fact.

204, 208 (1996); *Davis v. Patel*, 32 Ark. App. 1, 4, 94 S.W.2d 158, 160 (1990).

In the instant case, at issue are the written Agreement and the oral modification of the Agreement. The written Agreement states that Plaintiff "will be compensated to include expenses and hourly rate ($250.00/hr) along with (Retainer fee, based on a percentage of NPS (net profit savings). Such fee will be verified and agreed upon based on Customer Savings, and increased production." ECF No. 1-1. Viewing the facts in Plaintiff's favor, the Court must accept that the written Agreement was later orally modified to include a ten-year durational term and to clarify that the percentage of NPS as 30%.[5]

Defendants argue that the written Agreement does not contain all the essential terms of the agreement, such as the ten-year durational term and the 30% of net profit savings upon which the retainer fee is based.[6] Thus, Defendants conclude that the Agreement is prohibited by the statute of frauds and thus unenforceable.

Plaintiff, on the other hand, argues that the statute of frauds is inapplicable, because the Agreement was capable of performance within one year. According to Plaintiff, because there was no requirement for Defendants to implement Coleman's recommendations or to maintain them for over one year, there exists a possibility that the Agreement was capable of being performed within one year. In other words, if Defendants decided not to implement the recommendations or to remove them before the one-year mark, the Agreement would be completed. However, the Agreement contains no deadline for Defendants to decide whether to implement Coleman's recommendations. If Defendants decide to implement the recommendations at any time during the ten-year term, they are required to pay Plaintiff 30% of the net profit savings resulting from the implementation of the recommendations.

---

[5] Defendants deny that the Agreement was orally modified.
[6] Plaintiff does not argue that these terms are not essential.

Further, Coleman testified in his deposition that if Defendants decided to implement his recommendations, his plan was to staff the Ashdown Mill to "ensure compliance with the operating strategy." ECF No. 92-4, p. 13. His initial plan was to staff the mill with an "employee or two" for ninety days and then scale back the staffing to maybe once a week, then once every two weeks, and then monthly for the "duration of the contract."[7] ECF No. 92-4, p. 13. Thus, there is no possibility that the performance of the Agreement could be completed within one year. Defendants could decide to implement the recommendations at any time during the ten-year term, and Plaintiff would staff the Ashdown Mill to oversee the implementation of the recommendations. Defendants deciding within one year of the Agreement not to implement the recommendations at that time does not mean that performance would be complete. At any time before the end of the ten-year term, Defendants had the option of implementing the recommendations. Thus, performance could only be completed once the ten-year term expired.

The Court must also consider what constitutes "performance" under the Agreement. Plaintiff asserts that Defendants' payment of the retainer fee "was dependent on [Defendants'] choice to implement and maintain Coleman's recommendations for so long as it wanted." ECF No. 119, p. 8. The Court is not convinced that a decision by Defendants not to implement the recommendations within one year of the Agreement would constitute full "performance" under the Agreement. The Agreement was intended to span a period of ten years, and Defendants were obligated to pay the retainer fee during the ten-year period when the recommendations were being

---

[7] Plaintiff has filed an affidavit by Coleman stating, "In no way was there any sort of agreement or allegation that I would provide consulting services for a decade." ECF No. 116, ¶ 20. Defendants argue that this statement contradicts Coleman's earlier deposition testimony that his staffing plan to "ensure compliance with the operating strategy" would continue for the duration of the contract. ECF No. 92-4, p. 14. The Court is not convinced that these two statements are contradictory. It is obvious to the Court that Coleman's deposition testimony regarding a "staffing plan" was premised on the notion that Defendants would ultimately decide to implement Coleman's recommendations. In his affidavit, Coleman is attempting to clarify his deposition testimony by stating that he did not agree to provide general consulting services for ten years, meaning that the "staffing plan" referenced in the previous deposition was contingent upon Defendants' decision to implement his recommendations.

implemented. Even if Defendants made the decision within one year of the Agreement never to implement the recommendations, the Court is not convinced this decision would be considered "performance" under the Agreement. This decision is akin to a termination of the Agreement, and the statute of frauds contemplates performance of a contract and not the defeat of a contract within one year.

Accordingly, the Court finds that the statute of frauds applies to the Agreement because it could not be performed within one year. Because the written Agreement does not contain all the essential terms of the agreement, the written Agreement does not satisfy the Statute of Frauds and is unenforceable.[8]

### 2. Contract Terminable at Will

Plaintiff also argues that the Agreement was a contract for employment terminable at will and thus not subject to the statute of frauds. Plaintiff asserts that "employment contracts terminable at will do not fall under the statute of frauds because, by definition, they can be performed within one year." ECF No. 119, p. 9. The statute of frauds is not applicable to an oral employment contract for an indefinite duration that is terminable at the will of either party. *Country Corner Food and Drug, Inc. v. Reiss*, 22 Ark. App. 222, 225, 737 S.W.2d 672, 674 (1987). Here, the Agreement, based on the oral modification, was for a term of ten years and not for an indefinite duration. Further, Plaintiff has never alleged in this lawsuit that he was an employee of Defendants. Accordingly, Plaintiff's cursory argument regarding employment contracts and the statute of frauds must fail.

### 3. Full and Partial Performance

Plaintiff argues that its full performance and Defendants' partial performance of their

---

[8] Because the Court finds that the Agreement is within the statute of frauds, and consequently, unenforceable, the Court will not address Defendants' other arguments regarding the validity and enforceability of the Agreement.

8

respective obligations under the Agreement renders the statute of frauds inapplicable. Plaintiff asserts that it "fully performed under the Agreement, and [Defendants] partially performed by paying Coleman his travel expenses." ECF No. 119, p. 10. Plaintiff states that the "only thing left is for [Defendants] to compensate Coleman with the agreed percentage of increased profits and savings [Defendants] obtained from Coleman's recommendations." Plaintiff does not develop this argument or offer any meaningful analysis to support it. Further, Plaintiff does not identify what actions constitute "full performance" on its part.

"[T]he full performance on the part of one party and the part performance of the opposing party operates to take an oral agreement out of the statute of frauds." *Rovnaghi v. Ronaghi*, 2022 Ark. App. 203, at 6 (citing *Talley v. Blackmon*, 271 Ark. 494, 609 S.W.2d 113 (Ark. App. 1980) (holding that the full performance on the part of appellants by extending the loan and part performance on the part of appellee in making payments on the loan operated to take the oral agreement outside the statute of frauds)). Here, Plaintiff simply concludes that it has "fully performed under the Agreement" without identifying the conduct that constitutes the full performance. Under the Agreement, Plaintiff agreed to "consult for Domtar Ashdown mill." ECF No. 1-1. No doubt that "consulting" would include providing recommendations to Defendants regarding its processes. However, the Court cannot speculate as to what is considered full performance of a consulting obligation under the Agreement. Defendants essentially had ten years in which they could decide to implement Coleman's recommendations. If Defendants did so, Plaintiff agreed to staff the mill to oversee the implementation process. Plaintiff has made no effort to identify what it considers to be full performance of its obligation under the Agreement, and thus its argument regarding full and partial performance must fail.

### 4. Detrimental Reliance

Plaintiff claims that Coleman detrimentally relied on Defendants' promise to compensate Plaintiff with 30% of the net profit savings resulting from Coleman's recommendations when he created the list of recommendations for the Chemi-Washer and provided the list to Defendants. Detrimental reliance may be raised to defeat the defense of statute of frauds. *Van Dyke v. Glover*, 326 Ark. 736, 745, 934 S.W.2d 204, 209 (1996). However, the record does not support Plaintiff's assertion that Coleman relied on Defendants' promise to pay 30% of the net profit savings when creating his recommendations and providing them to Defendants. Plaintiff does not point the Court to any evidence to support its argument that Plaintiff relied on Defendants' promise to pay 30% of the net profit savings when he created the recommendations or improvement items. According to Plaintiff, Defendants had a choice whether to implement and maintain Coleman's recommendations. If Defendants chose not to implement the recommendations within the ten-year term, Plaintiff would not receive a percentage of net profit savings. Thus, it appears that Plaintiff would have created and provided the recommendations to Defendants regardless of whether they implemented them and Plaintiff was paid the 30% of the net profit savings. There simply is no evidence that Plaintiff detrimentally relied on Defendants' promise to compensate Plaintiff with 30% of the net profit savings when he created the recommendations.

### B. Unjust Enrichment

Plaintiff claims that Defendants have benefited from the consulting services and have failed to pay the agreed upon retainer fee for those services. "Unjust enrichment is an equitable doctrine based on the notion that a person should not become unjustly enriched at the expense of another and should be required to make restitution for the unjust enrichment received." *Tuohey v. Chenal Healthcare, LLC*, 173 F. Supp. 3d 804, 813 (8th Cir. 2016) (citing *Campbell v. Asbury Auto., Inc.*,

2011 Ark. 157, 381 S.W.3d 21, 36). "[A]n action based on unjust enrichment is maintainable where a person has received money or its equivalent under such circumstances that, in equity and good conscience, he or she ought not to retain." *Campbell*, 2011 Ark. 157, at 21, 381 S.W.3d at 36.

Defendants argue that they are entitled to summary judgment on Plaintiff's unjust enrichment claim because Plaintiff has presented no evidence regarding the amount of Defendants' alleged wrongful gain. A party is entitled to restitution, not damages, for unjust enrichment. *Hartness v. Nuckles*, 2015 Ark. 444, at 8, 475 S.W.3d 558, 564. Restitution is measured by the defendant's gain or benefit, not by the plaintiff's loss or injury. *Id.* "A claimant seeking restitution for unjust enrichment can generally recover the value of the benefit conferred upon the party unjust enriched." *Id.* (citing *Sanders v. Bradley Cnty. Human Servs. Pub. Facilities Bd.*, 330 Ark. 675, 956 S.W.2d 187 (1997)). "The claimant's burden is to 'produce evidence permitting at least a reasonable approximation of the amount of the wrongful gain.'" *Id.* (quoting RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 51 (2011)).

Here, Plaintiff was paid the full amount of every invoice he submitted, which totaled nearly $31,000 for retainer fees; work performed at an hourly rate of $250.00; and travel, meal, and other incidental expenses related to his four visits to the Ashdown Mill. The Court is not aware of any evidence in the record that calculates an approximation of the amount of Defendants' alleged gain or benefit. Plaintiff simply states that Defendants have failed to pay the retainer fee; however, this fact references Plaintiff's purported loss in this case, not Defendants' alleged gain. The amount of Plaintiff's alleged damages for breach of contract and the amount of the benefit conferred Defendants are conceptually distinct. *See id.*

In its response, Plaintiff does not address Defendants' argument regarding Plaintiff's

11

failure to produce any evidence of the amount of Defendants' alleged gain. Plaintiff summarily concludes that the evidence shows that Defendants implemented Coleman's recommendations and substantially benefitted from the recommendations but offers no reasonable approximation of the amount of Defendant's alleged wrongful gain. Accordingly, the Court finds that Defendants are entitled to summary judgment on Plaintiff's unjust enrichment claim.

### IV. CONCLUSION

For the reasons stated above, the Court finds that the Motion for Summary Judgment (ECF No. 92) should be and hereby is **GRANTED**. Accordingly, this case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this 6th day of June, 2022.

                                              /s/ Susan O. Hickey
                                              Susan O. Hickey
                                              Chief United States District Judge